UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

AUDREY E.,

                Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

**DECISION AND ORDER**

1:24-CV-00159 EAW

## <u>INTRODUCTION</u>

Represented by counsel, Plaintiff Audrey E. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner," or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. 6; Dkt. 11), and Plaintiff's reply (Dkt. 12).[1] For the reasons discussed below, the Commissioner's motion (Dkt. 11) is granted, and Plaintiff's motion (Dkt. 6) is denied.

---

[1] The Commissioner's motion was originally filed at Docket 10, but with an incorrect case reference. The Clerk of Court is directed to terminate the motion filed at Docket 10 as moot.

## BACKGROUND

Plaintiff protectively filed her application for SSI on June 11, 2019. (Dkt. 3 at 83).[2] In her application, Plaintiff alleged disability beginning June 1, 2017, due to mental health issues, anxiety, and depression. (*Id*. at 84). Plaintiff's application was initially denied on September 20, 2019. (*Id*. at 106-09). A telephone hearing was held before administrative law judge ("ALJ") Stephen Cordovani on January 21, 2021. (*Id.* at 37-82). On February 2, 2021, the ALJ issued an unfavorable decision. (*Id.* at 17-31). Plaintiff requested Appeals Council review; her request was denied on August 3, 2021, making the ALJ's determination the Commissioner's final decision. (*Id.* at 6-11).

Plaintiff appealed the case to the United States District Court for the Western District of New York. On January 16, 2023, pursuant to a Stipulation and Order for Remand, the Court reversed the February 2021 decision of the Commissioner and remanded the case for further administrative proceedings. (*Id*. at 1144-46). On March 9, 2023, the Appeals Council vacated and remanded the February 2021 unfavorable decision, noting that further evaluation of the opinions offered by Christine Ransom, Ph.D., Gregory

---

[2]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

Fabiano, Ph.D., V. Ng, Ph.D., and Breanna Cavanaugh, LMSW, was required.  (*Id.* at 1149-54).

A second hearing was held on September 14, 2023, in Buffalo, New York.  (*Id.* at 1044-80).  On October 27, 2023, the ALJ issued an unfavorable decision.  (*Id.* at 1022-37).  This action followed.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).  However, "[t]he deferential standard of review for substantial evidence does not apply to the

Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003)

(citing *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).

## II.    **Disability Determination**

An ALJ follows a five-step sequential evaluation to determine whether a claimant

is disabled within the meaning of the Act.  *See Bowen v. City of New York*, 476 U.S. 467,

470-71 (1986).  At step one, the ALJ determines whether the claimant is engaged in

substantial gainful work activity.  *See* 20 C.F.R. § 416.920(b).  If so, the claimant is not

disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an

impairment, or combination of impairments, that is "severe" within the meaning of the Act,

in that it imposes significant restrictions on the claimant's ability to perform basic work

activities.  *Id*. § 416.920(c).  If the claimant does not have a severe impairment or

combination of impairments, the analysis concludes with a finding of "not disabled."  If

the claimant does have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or

medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings").  *Id*. § 416.920(d).  If the impairment meets or medically

equals the criteria of a Listing and meets the durational requirement, *id*. § 416.909, the

claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity

("RFC"), which is the ability to perform physical or mental work activities on a sustained

basis, notwithstanding limitations for the collective impairments.  *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC

permits the claimant to perform the requirements of his or her past relevant work.  *Id*.

§ 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled.

If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden

shifts to the Commissioner to show that the claimant is not disabled.  *Id*. § 416.920(g).  To

do so, the Commissioner must present evidence to demonstrate that the claimant "retains a

residual functional capacity to perform alternative substantial gainful work which exists in

the national economy" in light of the claimant's age, education, and work experience.  *Rosa*

*v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted).

## DISCUSSION

### I.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step

sequential evaluation set forth in 20 C.F.R. § 416.920.  At step one, the ALJ determined

that Plaintiff had not engaged in substantial gainful work activity since October 29, 2018[3],

the prior SSI application filing date.  (Dkt. 3 at 1028).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of:

"major depressive disorder, bipolar disorder, anxiety disorder, post-traumatic stress

disorder ('PTSD'), and substance use disorder."  (*Id.*).  The ALJ further found that

Plaintiff's medically determinable impairments of post-concussion syndrome, headaches,

---

[3]    Prior to filing the instant SSI application on June 11, 2019, Plaintiff filed an SSI application on October 29, 2018.  (*See* Dkt. 3 at 1026).  The October 2018 application was denied in a notice of initial determination dated April 10, 2019.  (*Id.*).  Because the denial of the prior application was only two months prior to the date of the filing of the current application, the ALJ reopened the prior application, and the written determination considered the time period beginning on the prior SSI application date of October 29, 2018, through the present.  (*Id.*).

abdominal pain, urinary tract infections, dysuria, history of nephrolithiasis status post stent placement, conjunctivitis, sinusitis, and vitamin deficiencies were non-severe. (*Id.*).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing. (*Id.* at 1028-29). The ALJ particularly considered the criteria of Listings 12.04, 12.06, and 12.15 in reaching his conclusion. (*Id.* at 1029-31).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations:

> she can understand, remember, and carry out simple instructions and tasks; she can maintain attention and concentration and regular attendance at work for simple, unskilled work; she can work in a low-stress work environment, reflected by simple, unskilled work, no supervisory duties, no independent decision-making, no strict production quotas (as with assembly-line work), and minimal changes in work routine and processes; she can occasionally interact with supervisors and co-workers, but she can tolerate no or only incidental interaction with the public; she cannot engage in team, tandem, or co-dependent work**.**

(*Id.* at 1031). At step four, the ALJ found that Plaintiff had no past relevant work. (*Id.* at 1035).

At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of housekeeping, cleaner, industrial cleaner, and router. (*Id.* at 1036). Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act. (*Id.* at 1037).

II.    **The Commissioner's Determination is Supported by Substantial Evidence and Free from Legal Error**

Plaintiff asks the Court to remand this matter to the Commissioner, arguing that (1) the ALJ improperly conflated Plaintiff's disability and substance abuse in determining the RFC, and (2) the ALJ erred in assessing the supportability and consistency factors while evaluating the opinion evidence offered by Dr. Ransom, and in relying on opinions offered by Dr. Fabiano and Dr. Ng.  (Dkt. 6-1 at 18-30).  The Court has considered each of these arguments and, for the reasons discussed below, finds them without merit.

A.    **Assessment of the RFC**

Plaintiff's first argument is that the ALJ erred by improperly conflating Plaintiff's disability and substance abuse in determining the RFC.  (Dkt. 6-1 at 18).  In response, the Commissioner argues that the ALJ properly considered Plaintiff's substance abuse, including because the ALJ found that Plaintiff's substance abuse conditions, while severe, were not disabling, even when considered in combination with Plaintiff's other mental health disorders.  (Dkt. 11-1 at 8-9).  In other words, the Commissioner argues that the ALJ was not required to segregate any effects that might be due to substance use disorders, because the ALJ first determined that there was no disability considering Plaintiff's substance use and other impairments in combination.  (*Id.* at 10).

"Under the 1996 amendments to the Social Security Act, an individual 'shall not be considered to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled.'"  *Mims v. Apfel*, 182 F.3d 900, 1999 WL 376840, at *1 (2d Cir. 1999) (citation omitted).  Accordingly, "[w]hen there is medical evidence of an applicant's drug or alcohol abuse,

the 'disability' inquiry does not end with the five-step analysis." *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012).

"The 'key factor' in determining whether alcoholism or drug addiction is [a] contributing factor material to the determination of disability is whether the claimant would still meet the definition of disabled under the Act if [s]he stopped using alcohol or drugs." *Frankhauser v. Barnhart*, 403 F. Supp. 2d 261, 272 (W.D.N.Y. 2005); *see also Smith v. Comm'r of Soc. Sec.*, 731 F. App'x 28, 30 (2d Cir. 2018) ("Drug addiction is a material factor if the individual would not be found disabled if she stopped using drugs."); *Cage*, 692 F.3d at 123 ("The critical question is 'whether [the SSA] would still find [the claimant] disabled if [she] stopped using drugs or alcohol.'" (quoting 20 C.F.R. § 416.935(b)(1))). "If the remaining limitations would still be disabling to the claimant on their own, then the claimant is entitled to . . . benefits.  If the remaining limitations would not be disabling on their own, then the alcohol or substance abuse is considered material; and the claimant would not be eligible for benefits." *Hernandez v. Astrue*, 814 F. Supp. 2d 168, 181 (E.D.N.Y. 2011) (citations omitted).

The claimant bears the burden of proof of showing immateriality, *Cage*, 692 F.3d at 123-24, which requires her "to show through evidence in the record that [s]he would be disabled even if there was no substance abuse," *Wehrhahn v. Colvin*, 111 F. Supp. 3d 195, 205 (D. Conn. 2015).  "[E]vidence from a period of abstinence is the best evidence for determining whether an [impairment] would improve to the point of nondisability." *Ervin-Atkinson v. Comm'r of Soc. Sec.*, No. 18-CV-1056-FPG, 2020 WL 830434, at *2 (W.D.N.Y. Feb. 20, 2020) (citation omitted); *see also Rowe v. Colvin*, No. 8:15-cv-00652

(TWD), 2016 WL 5477760, at *8 (N.D.N.Y. Sept. 29, 2016) ("The medical evidence also supports a finding that Plaintiff's functioning improved since Plaintiff abstained from alcohol, including periods of 'brief sobriety.'").

Plaintiff's contention that the ALJ did not properly evaluate the materiality of drug and alcohol abuse on Plaintiff's functional limitations is misplaced. "In general, if a plaintiff has drug addiction and alcoholism ("DAA") and if plaintiff is disabled considering all of his or her impairments, including the DAA, then the ALJ is required to perform addition[al] analysis." *Patrick F. G. v. Comm'r of Soc. Sec.*, No. 1:20-CV-0537, 2021 WL 3421446, at *8 (W.D.N.Y. Aug. 5, 2021) (citing SSR 13-2p). "However, if the plaintiff has a DAA and the ALJ determines plaintiff is not disabled considering all of plaintiff's impairments, then the analysis concerning DAA materiality ends." *Id*.

Here, the ALJ determined that Plaintiff had a severe impairment of substance use disorder. (Dkt. 3 at 1028). The ALJ discussed Plaintiff's substance abuse related symptoms in connection with the RFC. (*See id*. at 1032 ("She also stated that she smokes marijuana once or twice a day, and that her boyfriend provides it to her. The claimant pointed out that she used to do marijuana up to ten times a day, and that it lowered her energy levels. The claimant noted that she last used alcohol about two months earlier, and that she recently went off her medications because she was having trouble with a counselor and drinking."); *id*. at 1033 (noting that Plaintiff felt better when taking medications and abstaining from alcohol, and she was admitted for five days in November 2020 for a successful alcohol detox, and she had recently stopped marijuana due to money issues,

which she hoped would help with her energy levels)).  Then, the ALJ found that Plaintiff's severe impairments—including the substance abuse—were not disabling.  (*Id*. at 1037).

Accordingly, the ALJ was not required to provide any further analysis as to whether Plaintiff's substance abuse, standing alone, affected Plaintiff's functioning.  *Patrick F. G.*, 2021 WL 3421446, at *8 ("Here, the ALJ determined at step two Plaintiff had a severe impairment of alcohol use; however, the ALJ ultimately determined Plaintiff was not disabled considering all of his impairments.  Because the ALJ's determination that Plaintiff was not disabled was proper and supported by substantial evidence, the ALJ did not err in failing to determine DAA materiality."); *see also Paulette M. v. Comm'r of Soc. Sec.*, No. 23-CV-04668 (HG), 2025 WL 383656, at *9 (E.D.N.Y. Feb. 4, 2025) (noting that "Plaintiff seems to take issue with the fact that the ALJ discussed Plaintiff's substance abuse in the first run of the five-step analysis," but explaining that "the mere discussion of Plaintiff's DAA in the ALJ's first five-step analysis was not error"); *Peter W. v. Comm'r of Soc. Sec.*, No. 6:20-CV-1551 (TWD), 2022 WL 523744, at *10 (N.D.N.Y. Feb. 22, 2022) ("Plaintiff contends the ALJ failed to properly evaluate the materiality of drug and alcohol abuse on Plaintiff's functional limitations, as required by SSR 13-2.  This challenge is misplaced, as the DAA regulations and SSR 13-2 'only contemplate an analysis concerning the materiality of drug and/or alcohol abuse *after* a claimant is found disabled at step five.'") (quoting *Anderson v. Berryhill*, No. 14-CV-6937 (DLI), 2017 WL 1154993, at *11 (E.D.N.Y. March 27, 2017)).

Plaintiff cites to various cases which she contends support her position that the ALJ did not properly perform the DAA analysis.  (*See* Dkt. 6-1 at 21).  For example, Plaintiff

cites *Faeth v. Comm'r of Soc. Sec.*, No. 6:19-CV-6133SR, 2020 WL 5792975 (W.D.N.Y. Sept. 29, 2020), which states that "[i]n analyzing cases where substance abuse is present, the regulations make clear that the ALJ must first make a determination as to disability by following the five-step sequential evaluation process without segregating any effects that might be due to substance use disorders." *Id.* at *3. As explained above, that is what the ALJ did in this instance: he considered all of Plaintiff's impairments, without segregating any effects that might be due to Plaintiff's substance use disorders. Accordingly, *Faeth* does not support Plaintiff's argument. Plaintiff also cites *Nichelle W. v. Comm'r of Soc. Sec.*, No. 21-CV-501Sr, 2023 WL 6377343 (W.D.N.Y. Sept. 29, 2023) and *Jessica B. v. Comm'r of Soc. Sec.*, No. 20-CV-1512MWP, 2022 WL 3584365 (W.D.N.Y. Aug. 22, 2022), wherein the court remanded the matters due to errors in the ALJ's analysis of evidence relating to substance abuse. However, in *Nichelle W.*, the court remanded the case because the ALJ improperly discounted certain evidence relating to the plaintiff's substance use disorder. 2023 WL 6377343, at *5 ("In the instant case, the ALJ erroneously dismissed evidence supporting a finding of disability because such evidence was related to substance abuse."). Similarly, in *Jessica B.*, the ALJ discounted a particular medical source opinion in the record, and the court's concern was that the ALJ "may have improperly conflated the substance abuse analysis with the disability determination itself." 2022 WL 3584365, at *4 (quotations and alteration omitted). In other words, those cases stand for the proposition that an ALJ should refrain from using evidence of substance abuse to discount the severity of the plaintiff's other impairments, or other medical opinions in the

record.  Here, the ALJ took no such action.  Accordingly, remand is not required on this basis.

**B.    <u>Evaluation of Opinion Evidence</u>**

Plaintiff's second and final argument is that the ALJ erred in assessing the opinion evidence, focusing specifically on the March 2020 assessment of Plaintiff by Dr. Ransom. (Dkt. 6-1 at 22-30).[4]  In response, the Commissioner contends that the ALJ reasonably found Dr. Ransom's opinion to be unpersuasive.  (Dkt. 11-1 at 14).

Under the regulations applicable to Plaintiff's claim, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources."  20 C.F.R. § 416.920c(a).  Further, when a medical source provides one or more medical opinions, the Commissioner will consider those medical opinions from that medical source together using the factors listed in paragraphs (c)(1) through (c)(5) of the applicable sections.  *Id*.  Those factors include: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, purpose and extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) any other factors that "tend to support

---

[4]    Plaintiff also states that the ALJ erred when "consisting [sic] the consultative examination opinion and the non-examining state agency opinion" (Dkt. 6-1 at 22), but Plaintiff does not offer any meaningful argument as to why she believes the ALJ erred in his assessment of these opinions.  To the extent Plaintiff intended to raise such an argument, the Court has addressed the ALJ's evaluation of these opinions in terms of their consistency and supportability with Dr. Ransom's opinion.

or contradict a medical opinion or prior administrative medical finding." *Id.* at § 416.920c(c).

When evaluating the persuasiveness of a medical opinion, the most important factors are supportability and consistency. *Id.* at § 416.920c(a). With respect to "supportability," the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at § 416.920c(c)(1). With respect to "consistency," the new regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at § 416.920c(c)(2).

The ALJ must articulate his consideration of the medical opinion evidence, including how persuasive he finds the medical opinions in the case record. *Id.* at § 416.920c(b). "Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still articulate how [he or she] considered the medical opinions and how persuasive [he or she] find[s] all of the medical opinions." *Andrew G. v. Comm'r of Soc. Sec.*, No. 3:19-CV-0942 (ML), 2020 WL 5848776, at *5 (N.D.N.Y. Oct. 1, 2020) (quotations and citation omitted). Specifically, the ALJ must explain how he considered the "supportability" and "consistency" factors for a medical source's opinion.

20 C.F.R. § 416.920c(b)(2). The ALJ may—but is not required to—explain how he considered the remaining factors. *Id*.

Dr. Ransom evaluated Plaintiff in connection with an Erie County Department of Social Services examination on March 12, 2020. (Dkt. 3 at 857-62). A mental status examination revealed that Plaintiff's general appearance, speech and language, thought processes, orientation, cognitive functioning, and insight were normal, and Plaintiff's mood, affect, attention and concentration, recent and remote memory skills, and judgment were moderately impaired or abnormal. (*Id*. at 858-59). Plaintiff was moderately limited—meaning unable to function 50 percent of the time—in the following areas of mental functioning: following, understanding, and remembering simple instructions and directions; performing low stress and simple tasks; performing complex tasks independently; maintaining attention and concentration for rote tasks; regularly attending to a routine and maintaining a schedule; maintaining basic standards of hygiene and grooming; and using public transportation. (*Id*. at 860).

The ALJ assessed Dr. Ransom's opinion as follows:

> I find that Dr. Ransom's opinions are not persuasive because they are not supported or consistent with the overall medical evidence, including mental status examination clinical findings and the well-supported opinions of consultative psychological examiner Dr. Fabiano and reviewing psychological consultant Dr. Ng, as discussed above. Dr. Ransom's opinions are also internally inconsistent; for example, Dr. Ransom finds that the claimant has moderate limitations in the ability to understand, follow, and remember simple instructions and directions, but her mental status

examination of the claimant revealed normal cognitive functioning, normal speech and language, normal orientation, and a normal thought process.

(*Id*. at 1035 (citations omitted)).

As an initial matter, the Court finds that the ALJ properly evaluated the opinion offered by Dr. Ransom in compliance with the regulations, including by considering both the supportability and consistency factors. The ALJ considered the consistency of the opinion, explaining that Dr. Ransom's opinion was not consistent with other evidence in the record, including the opinions offered by Dr. Fabiano and Dr. Ng. Earlier in the decision, the ALJ discussed that Dr. Fabiano opined that Plaintiff had only mild-to-moderate limitations, including mild limitations in the ability to understand, remember, or apply simple instructions and directions, moderate limitations in the ability to understand, remember, or apply complex instructions and directions, and no limitations in several other areas of mental functioning. (*Id*. at 1033; *see also id*. at 1034 (discussing second consultative examination by Dr. Fabiano, in which he concluded that Plaintiff had no limitations in several areas of mental functioning, including for understanding, remembering, applying, and carrying out simple or complex instructions and directions, and moderate limitations only for using reason and judgment to make work-related decisions and regulate emotions, controlling behavior, and maintaining well-being, making judgments on complex work-related decisions, and interacting with supervisors, co-workers, and the public)). Similarly, the ALJ noted that Dr. Ng concluded that Plaintiff "would be able to understand, remember, and carry out simple instructions, maintain a reasonable pace, interact, and adapt to unskilled work in a routine work setting with limited public contact." (*Id*. at 1034). The mild-to-moderate limitations assessed by Dr. Fabiano

and Dr. Ng conflicted, to at least some degree, with the opinion offered by Dr. Ransom, and the ALJ was entitled to consider this conflict when assessing the opinion evidence in the record. *See, e.g., Heaman v. Berryhill*, 765 F. App'x 498, 500 (2d Cir. 2019) (recognizing that the ALJ may "choose between properly submitted medical opinions" (citation omitted)); *see also Kimberly M. v. Comm'r of Soc. Sec.*, No. 19-CV-1546-LJV, 2020 WL 6947346, at *2 (W.D.N.Y. Nov. 25, 2020) (explaining that while an ALJ cannot set his own expertise against that of a physician, the ALJ is free to choose between properly submitted medical opinions (citation omitted)).

Further, the ALJ noted that Dr. Ransom's opinion was internally inconsistent. For example, while Dr. Ransom's mental status examination revealed that Plaintiff had normal thought processes and orientation, as well as normal cognitive functioning and insight, she opined that Plaintiff could not follow, understand, and remember simple tasks and directions for 50 percent of the time, nor could she maintain attention for rote tasks. *See, e.g., David C. v. Comm'r of Soc. Sec.*, 659 F. Supp. 3d 354, 368 (W.D.N.Y. 2023) ("Indeed, even under the old regulations, an ALJ is not required to credit a treating physician's opinion when it is internally inconsistent, not supported by the record, or contrary to other evidence in the record."). Finally, the ALJ noted that Dr. Ransom's opinions were not consistent with the largely normal mental status examination findings that were reflected elsewhere in the record. (*Id*. at 1035; *see also id*. at 1032 (noting that "[m]ental status examination clinical findings in the claimant's treatment notes are generally stable, and the

clinical findings that are present generally show issues with insight, mood, and judgment")).[5]

Plaintiff argues that the ALJ's supportability analysis failed because it relied on selective portions of Dr. Ransom's opinion. (Dkt. 6-1 at 25). However, an ALJ is not required to discuss every shred of evidence in the record. *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012) ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." (citation omitted)). Here, the ALJ discussed Dr. Ransom's opinion, and the Court can discern from the written determination how the ALJ arrived at his assessment. The fact that the ALJ did not specifically note in the written determination that Dr. Ransom found that Plaintiff's mood and affect were moderately labile, and that her attention and concentration were moderately impaired, does not undermine the ALJ's assessment of the consistency and supportability factors, particularly given the robust discussion of the opinion evidence in the record as a whole. Further, the ALJ discussed Plaintiff's mental limitations at length in the written determination—including that she has difficulty maintaining concentration or a schedule, that stressful situations make her nervous, and that she has some issues with her judgment. (*See, e.g.*, Dkt. 3 at 1032). In other words, this is not a case where the ALJ ignored any

---

[5]    Plaintiff argues that the ALJ erred because he failed to comply with the Appeals Council's remand order to evaluate the consistency and supportability of Dr. Ransom's opinion. (Dkt. 6-1 at 28-29 ("It has consistently been held that 'failure of an ALJ to abide by the directives in an Appeals Council remand order constitutes legal error requiring remand.'" (quoting *Ellis v. Colvin*, 29 F. Supp. 3d 288, 299-300 (W.D.N.Y. 2014)). As explained above, the Court finds that the ALJ adequately considered both the consistency and supportability factors when assessing Dr. Ransom's opinion, and therefore Plaintiff's argument that the ALJ did not comply with the Appeals Council's remand order fails.

evidence supporting a finding of disability, and it is clear to the Court how the ALJ arrived at his assessment of Dr. Ransom's opinion.

Plaintiff's argument regarding the ALJ's weighing of the opinion evidence amounts to no more than her disagreement with the ALJ's conclusions, which is not a valid basis for remand. *Duffy v. Comm'r of Soc. Sec.*, No. 16-CV-985S, 2018 WL 4103180, at *4 (W.D.N.Y. Aug. 29, 2018) ("In short, Plaintiff simply disagrees with the ALJ's assessment of the evidence in the record, but such a disagreement does not amount to the absence of substantial evidence."). To the extent there was other evidence in the record suggesting a more severe assessment of Plaintiff's mental functioning, where there is conflicting evidence in the record, it is the ALJ's duty to consider and weigh those discrepancies— and it is not the Court's function to re-weigh the evidence. *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016) ("Krull's disagreement is with the ALJ's weighing of the evidence, but the deferential standard of review prevents us from reweighing it.").

Finally, the assessed RFC is consistent with and supported by evidence in the record. The ALJ assessed a highly restrictive RFC, which limits Plaintiff to simple, unskilled work, and with limitations for her interactions with others. These limitations are consistent with the mild-to-moderate limitations assessed by both Dr. Fabiano and Dr. Ng. *See Waledahmad A. v. Comm'r of Soc. Sec.*, No 1:22-cv-398-DB, 2024 WL 3722697, at *11 (W.D.N.Y. Aug. 8, 2024) ("[A]n opinion of mild to moderate limitations in mental functioning is not inconsistent with an RFC for unskilled work."). Further, the RFC incorporates some limitations assessed by Dr. Ransom, including that Plaintiff had a moderate impairment for sustaining attention and concentration, for recent and remote

memory skills, and for regularly attending to a routine and maintaining a schedule. *See, e.g., Jennifer M. v. Comm'r of Soc. Sec*., No. 1:21-CV-980 (GTS/ATB), 2022 WL 19003388, at *7 (N.D.N.Y. Nov. 18, 2022) ("The ALJ accounted for functional limitations associated with moderate difficulties with concentration, pace, social interaction, and maintaining a regular schedule by limiting plaintiff to unskilled work requiring only simple, routine tasks and simple work-related decisions."), *adopted*, 2023 WL 2236607 (N.D.N.Y. Feb. 27, 2023). Plaintiff identifies no further limitations she believes should have been incorporated beyond those that are already accounted for in the RFC. For those reasons, remand is not required on this basis.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 11) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 6) is denied. The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: June 30, 2025
        Rochester, New York